It is an appeal from a decision out of the District Court in the District of Delaware. All right, Judge Rader was just pointing out that he thinks you can't do that. You killed a lot of trees with this record that you submitted to us. But it is certainly, you've given us a fully developed record to work from, even though I think some of the issues are narrower than they might otherwise appear on first glance. But, Mr. Letall, you want four minutes for rebuttal? Yes, Your Honor, thank you. Okay, you may begin. Thank you, Your Honor, and may it please the Court, Brian Letall on behalf of the plaintiff appellant, Cronos Technologies, to your comments about the record. I think, in part, some of the volume is a consequence of the Court's rules regarding submission of summary judgment briefing in the record when a summary judgment is on appeal. And here, there were a number of issues on summary judgment, many of which are not really at the heart of the appeal. But nonetheless, we understood the Court's rules to require those submissions as part of the appendix. Let me ask you that, so when you say what is really at the heart of the appeal, if we were to decide, and I'm not saying we are, but if we were to decide the item code and identifying code issue against you, is that really the end of the inquiry? No, Your Honor, it's not. I assume you're talking about, well, let me make sure I clarify. The construction. Is the construction correct? No, that would not be the end of the inquiry. So we've presented our argument in three parts because, from our perspective, there are sort of a series of three areas of error committed by the District Court. And I'll present them, and we've presented them in a particular order because a reversal at each stage would obviate the further stages, but an affirmance would not. So in the first instance, we addressed the claim construction. And the primary claim construction at issue is the item code or identifying code terms. The parties in the court all agreed that those terms should be construed the same way. Item code appears in Claim 1, identifying code in Claim 22. The District Court also construed two related terms about the user inputting the item code, and from our perspective, the District Court erred on those constructions in a couple of ways. In the context of item code, the District Court actually did not, and made a point of not entering a construction of the word code or an interpretation of what constitutes a code. In fact, the court's claim construction order, and this is pages 21 to 22 of the appendix, actually affirmatively says that code has a plain and ordinary meaning and that it's not appropriate to give it any further construction. The District Court, however, in then granting summary judgment, appears to have departed from that in an unspecified manner at page 5 of the appendix. We see the court holding that the items that our expert and that the plaintiff's papers pointed to as constituting the accused codes, the District Court said those don't meet codes as construed by the court. The court did not enter a construction of codes. No, what the court refused to do at pages 21 and 22 is to say that the word unique should be basically built into the identifying code limitation, but the court did say that item codes and identifying codes cannot include user discernible information. That is one of the areas we assign as error to the District Court's construction. The reason is that is very much an important part of the error. It does not, as I mentioned and as I'll be happy to get to, affirming that decision does not get to the place where you affirm the summary judgment on non-infringement because there are separate problems with that determination. Okay. Tell me why because that's where I started and I'm still confused. Sure. Sure. So after the court entered its amended construction, it provided the parties an opportunity to submit supplemental expert reports, basically supplemental declarations. By the amended construction, you mean the one that shifted from the item code can't be the user discernible information that comes up on the display to it can't have any user discernible information in it. Essentially, well, there's- That was a real shift. That was a real shift. That's correct. But also, Your Honor, as the court may recall this case, it initially had plain construction proceedings long before the summary judgment stage. The item code terms were never proposed by any party for construction. The District Court did not enter any construction of them. At the summary judgment stage, the District Court then invited for the first time additional briefing on the construction of item code as a term and entered a new construction of that and the related terms in July of 2016. But it wasn't really new. It was the only construction of it. That's fair. It was the only construction. It was new in that it was not part of the court's original claim construction order in the case. And were there any objections to the entry of that construction of those terms? I'm sorry, Your Honor. Do you object to this? Yes, very much so. We objected both that it was inappropriate to be offering construction of those terms at the time because the defendant had not proposed that they required construction and indeed moved for summary judgment arguing an interpretation that we argued was inconsistent with the ordinary meaning of the term, which would, of course, apply where there was no construction. I do want to disagree a little bit with one comment you made about the court's ruling on construction and the word unique because what the district court said at page 22 of the appendix is, it is appropriate to give the word code, an item code, its plain and ordinary meaning to one of skill in the art. The district court did decline to offer a particular construction of the word code. From our perspective, then offering a meaning of that, and I do want to get to the point The court says including the examples, all right, because that's where he said he wasn't going to do this, is unnecessary in light of the court's inclusion of defendant's distinct limitation discussed below. What the court then goes on to say is that item code and user identifiable information must be distinct from one another. That's right. Let me get to where I think the district court got a little bit off track with that part of the construction. There is an element of the claims that refers to user discernible in claim one or user cognizable information in claim two. The structure of these claims talk about two sets of product or group of product identifying information. You have an item code or an identifying code and you have user discernible or user cognizable information. Those are both claim elements. We presume under longstanding precedent, consistent with longstanding English usage, they're probably different. That is correct, but that means that they refer to different things in the application of the claim to an accused device and in the claim itself. One way to conceptualize this, you can think of the user cognizable or user discernible information as a more robust, fulsome, helpful, whatever terminology you want to use, description of some product or service or group of products potentially that the patent talks about that you might be looking at. The item code as more of a shorthand or an abbreviated or condensed form that is actually what the system uses to communicate the information within itself. So you could think of, for example... Well, let me just, I guess, this is why I guess, I've been thinking about this way and I want you to clarify it. It seems to me that in the claim construction, the judge said one thing, namely the item code can't be the same as the user discernible information that comes up on the display. Then in doing summary judgment, the judge said the item code can't be user discernible, can't have any user discernible information, or at least not any that has some derivability with respect to the displayed information. And the first is a much less restrictive construction than the second, and the second is what he relied on for the summary judgment. I believe you have accurately summarized the problem. So tell me why the second is wrong, and in particular, address for me two passages in the specification, column six, line, I don't know, let's say 10 to 16 or something, and column eight, lines, what is it, 22 to 25, both of which are pretty strongly suggestive, until you explain otherwise, of the proposition that the item code can't actually have user discernible information in it. Sure. So I think you've very correctly identified exactly where we see the district court going astray. So let me address those passages first, and I want to start at column six, this is about line 19. Under most circumstances, this information... Right, but can you start a little bit above it? If you don't, it says, we'll be unable to provide the user with a user discernible interpretation of the product identifying code. Right. So remember that the context of the invention, and in one embodiment, you have an offline ability to enter an item code, and when the system connects at some point in the future, it will bring back the more robust product description that is referred to as the user discernible or user cognizable data. Now that doesn't mean, however, that there is nothing user discernible in the item code itself. What it means is that you won't have the fulsome product description until it brings that back. But that's different than saying the item code is completely unintelligible to any human. And the next sentence that I was getting to a moment ago at line 19 says, under most circumstances, this information, and that's the item code, will be of little use to the DPU user. So what that's saying is, many times, that information, that item code, won't be very useful to you as a person, human being, looking at it. But by implication, that obviously means it's not always the case that you won't understand it. Let's put aside the very small class of people who speak UPC. That's fair, but that's an example. So the patent contemplates, for example, that the item code may be entered in any number of ways, including by a keyboard, by voice recognition, et cetera. And that's explicitly discussed in the specification. If you can enter the item code by a keyboard or by a voice recognition device, you clearly have to be able to understand it enough to type it in or speak it. No, you just read a series of, I mean, I have no idea what, you know, an internet, what's the address? An internet protocol address? Is that what you're referring to? Yeah, an IP address, right. An IP, what those, I once did, but I don't anymore know what the series of however many digits is, but I can read them aloud. Sure, but that's an instance where, let's imagine for the moment, and I apologize, I'm a little into my rebuttal time. Let's imagine for the moment that the code was, instead of 27 digits, only four. It would still be a code. It would still be something, but you could pretty readily learn the four digits that represent a bottle of Diet Coke, or four digits that represent a particular other product, and you would understand those things, and they would be recognizable to you in the same way that text becomes recognizable to people. They're not distinct from user cognizable. What about the fact that the specification expressly states that user discernible information is in no way directly derivable from the product code? Well, and we haven't suggested that the, what we've referred to, so I think the problem arises from the fact that the specification and the claims refer to these two categories, the user discernible information, the item code, and we agree that those point to different things, but that's not the same as saying that the item code can never be in any way discernible. The fact that it may be discernible, and that you may be able to recognize it, doesn't mean it's not an item code. Indeed- Well, when you say discernible, the patent isn't talking about the fact that somebody, as Judge Toronto says, might speak UPC. The patent is talking about user discernible information that has to do with how you pick your product. That's correct, but the patent is very expansive on what could qualify as an item code. It could be almost anything. The item code itself isn't really the core aspect of the invention, obviously. The invention is about creating this remote ability to interactively update and develop order lists and edit them and so forth, and indeed, at column three, it talks- But the patent is really not about searching. I would disagree with that. I think, as we've pointed out, there are a number of embodiments- Using ordinary language searches to develop a list of items that fall under the more categorical search terms, and then second step, putting the items that come up into a shopping cart, a figurative shopping cart, before you press the button that says, order this one. I would suggest the patent explicitly does talk about that very thing. This is figure four and- Figures four, five, eight. Where's the item code in that? The item code, Your Honor, is essentially the thing behind what you click. This is really what the invention and the patent is talking about. There's the description that you look at as a user, and then there's the item code that the system uses to communicate back and forth between the merchant and your system, and tell it, okay, this is what you want. When you select a particular kind of butter in one of the examples in the patent, the user discernible part you're seeing is which kind of butter you selected. The system is sending the item code and using the item code as the item on your list. Because you've already got- Item code to figure four. It doesn't use the word item code in discussing figure four. What the patent says is that figures three through 10, and this is at, I'm sorry, column seven around line 14. Figures three through 10 involve exemplary DPU screens that illustrate following the sequence of steps involved in creating and submitting the order list. And that obviously includes figures four, five, eight, all of which involve this very approach of being presented with suboptions and selecting one to have that placed on your list. And that's the explicit context of those figures. You're way out of time. I'll give you two minutes for rebuttal. Thank you, Your Honor. And we'll give you an extra two minutes if you need it. Thank you. Your Honor, if it would please the court, my name is Nathan Sinclair. I'm here on behalf of Expedia, Priceline, and Tribelocity. I have two primary points that I'd like to cover with the court. And if the court sees fit, we can also address the standard of review issues that came into play as well. First, the district court's claim construction is correct. The construction came straight from the patent specification. I'm sorry. Which construction? It seems to me that the district court did actually change constructions between the one announced under the claim construction, which had that crucial word, the, in it for the user discernible information, and then in summary judgment said the item code can't have a user, can't have user discernible information, even if it's different from the user discernible information that comes up on the display. Right. And I think the court has already highlighted the portions of the patent that the district court was leaning on in that construction, particularly column eight around lines 22 through 25, which address that particular issue as it deals with item code. As the court has already looked at it, it talks about the translation, referring to the translation of the item codes, is distinct from the user discernible representation of the product. And then that same language goes on to say that the latter, referring to user discernible representations, which could be, you know, anything from the manufacturer, the source, the product name, the description, all of which is taught by this patent, the latter being in no way derivable from the product code. That is something that... The critical thing really then is the district court's exception or accepting your distinct limitation in the claim. Yes. That's separating the two. Yes. Okay. And with that, obviously, as we were getting to, the court took that and it imported that directly into its memorandum opinion at page 13. It recognized that that column eight portion of the patent, and also I think we referred to a portion in column six that discusses that the representation is not stored in memory. It further supports what the court found in column eight with respect to lines 22 through 25. Can you address what seems to me the largest point the other side has to make about the spec, which is the whole situation described in figure four and column nine and getting a menu of options and you use that, the butter one or the perishable items or perishable whatever it is, and you then at that point start the process of putting it into an order list, which you can then modify. Why is that process not the entry by the user into the data entry device of an item code? We don't know quite what it is, but it's something behind the hyperlink, presumably, that is not identical to the words on the screen, but is one way for entering an item code. And if that's true, how can that be squared with this notion that it can't be discernible by the user? Well, the way we would square those issues is we wouldn't just jump to that remote portion of the lower portion of column nine and ten. We actually start our review where it initially discusses figure three, which is around column seven. And in column seven, it discusses once an item has been added to the current product order list, response icons 62 and 64 appear on the screen. Those response icons, which are shown in figure three, are shown as column number 62 and 64. Those are also referred to in the patent as virtual buttons. Those virtual buttons appear as a result of a product being scanned or being entered in some way. So say, for example, from column seven continuing on through column nine, there's further discussion at column nine around 35 through 52 of those same response icons, 62, which appear as the result of a product being added to the list. So as we talk about these response icons, they are a result of the command entry device. The command entry device is something that is separately claimed in the patent from the data entry device for inputting the item codes. The data entry device has the item codes input via a scanning wand, as the counsel also said, through a keyboard or some other means. But it teaches that the data entry... Or a touch screen. It may perhaps teach that as well. But it be a separate device performing a separate function. Without that, without the input of the item code itself, this invention is otherwise rendered useless. So your position is that figure four is directed to the command entry, or the display screen, and that that's separate and apart from all the other data that was previously inputted. That is correct. As figures three and four, they both discuss this command entry device. And this command entry device is for user selection to provide these response icons, which are taught in column 10 as well, lines 7 through 17, which the appellant continues to reference throughout his briefing. Specifically, in column 7, 9, and 10, the patent teaches that once an item is added to the ordered list by scanning the product, response icons 62 appear on the display as virtual buttons. And they can be used for anything ranging from adjusting increments of the highlighted items, which is taught in these submenus that provide for frequently ordered items. So as we look at their construction, the appellant's construction would again, would essentially write out the item code limitation as a required portion of the claim. The item code, the data entry device is required, as is taught by this patent in both claims one, claims 22, and throughout the specification, that the item is input through some form of a data entry device. And then subsequently, and not subsequently in time, but as the patent teaches, that some user selection or manipulation can happen after the item code is input. If item code was so important to your overall analysis here, why didn't you ask for that construction up front? Initially, there were some issues with respect to other claim terms that we thought got us to the same point. Particularly in this case, the data entry device was a term that was a part of the original claim construction. And the court involved that in the supplemental construction as well. So as a result of several issues that came up in summary judgment, the court invited additional construction with relation to this term and the data entry device and user inputting terms as well. So moving along, if there are no further questions with respect to those issues. Really the core of this issue is the appellate attempting to conflate the selection by user, which is taught in columns 10 around lines 7 through 17, with the actual item code inputting that is done by the data entry device in this case. If we accept the district court's proposition that the item code and the user discernible information have to be distinct, is there really any debate about infringement? No. I think if that follows along with the data entry device being separate from the command entry device and not allowing this user presentment to overtake or write out the necessity of the item code or the data entry device as the patent teaches, then the infringement, the district court's opinion should be affirmed. To what extent does it matter, if any, that Judge Stark did not rely or use the expert reports in making the summary judgment determination? Well, I think what Judge Stark did in this particular case, he looked at the record. He reviewed the record as a whole. He reviewed the claim construction briefing on these issues. And again, as clearly came out at page 13 of the memorandum opinion, he highlighted on the record itself, column 8, lines 22 through 25, although the court did say it consulted the expert opinion of Dr. Shamos, because his opinion supported the record itself, the answers were here in the record. I understand that the intrinsic record will trump the extrinsic evidence, but it just seems to me that we should be careful in saying that it's okay for a trial court to disregard expert testimony or an expert report in making a summary judgment determination on the basis that the judge is satisfied on the basis of the intrinsic record alone. I mean, why then have expert reports? They're designed and intended to raise material facts that can dispute. Well, first, the issues that we're addressing were issues of claim construction that were decided earlier in the case as an issue of law. And subsequently, again, at this supplemental point, still again as an issue of law. But this court has dealt with those very issues which you discussed, which are almost analogous. In the Collins versus Nortel case, which is a case around 2000, it was a case relating to fiber optics and dynamic networking switching. In that very case, the court reviewed expert reports, and there was an expert affidavit that otherwise cited a JNET switch is the same as a TST switch. And the court, in viewing that, having legal insufficiency because the expert said X is Y because I define it as that. And the court said without factual foundation, this opinion of this expert is legally insufficient. So this is the reason why, because the expert report that was provided did not adopt the court's claim construction in this application to find a probable theory of infringement. It used the improperly brought, previously rejected claim construction that it had previously issued to the court. In subsequent cases, 2001, there was a Novartis versus Benvenu letter. Did the court here find that the expert reports were legally insufficient? There's no such finding in this case. No. The court found that the report by Dr. Shamos applied the court's claim construction, and it further undergirded the court's review of the intrinsic record as it saw it. And the court does have the authority under the Planet Bingo case to refuse a particular construction or review of it if it otherwise provides for the antithesis of what the claim construction and the claims as construed would require. And that's what we did in this particular case. Can you just explain to me, with respect to the allegedly infringing devices or activity, how do you all match up the user selections with the actual things that are chosen? There is no database with item codes for a hotel or a flight or anything like that? I'm not sure if I'm understanding your question correctly. It has to do with infringement. Right. As far as our systems, our users would input a series of parameters that they understand to find, say, a destination, a flight or a hotel room. So those set of parameters would otherwise allow them to purchase what would be a purchasable product, a flight which would be on a particular day, a particular flight route, a seat on that flight at a particular time, a hotel in a particular city on a date range. So what does your system do then? Just take those parameters and then search for those things? Yes. So there's not a pre-established database that you're searching from? It reaches out to several backbone travel databases to find the available flights through, say, to use one of them as an example, Expedia. You would put in these series of parameters based on the user's preferences, what they would understand and where they want to go, all being things that they understand and know, and put it into the database. The database would search and provide potential options for flights on that particular set date under which the user searched. But why isn't the category LAX to BCA, you guys used an example, 9-1-17 to 9-5-17 an item code? Because all of them are user discernible. Even though they do meet the definition of item code as something that can actually refer to a group. And even though the databases, presumably if they're searchable, are using those terms to identify a group of things that come within those terms. It's all about user discernibility of the terms entered by the consumer. Correct. And is it true that in the figure 4 situation, and I don't mean to limit it to figure 4, but the general discussion of how you say, tell me what perishable items you have, that the result is there is not in fact something that appears on that screen for which the user hasn't entered an item code. Everything that appears on that screen is something for which the user has in fact entered an item code. Reading the patent in totality, as it's taught from column 7 through column 9 and 10, which refer all to figures 3 and 4 within the parameters of figures 3 and 4, it continues to discuss, even as far as in column 9 at line 54, in a further embodiment of the system, the user can scan a bar code or other machine readable code as appropriate to the data entry device. Maybe I'm just misremembering. I thought there was something in there about how you can ask the system, what perishable goods do you have today? And it will then give you, say we've got onions or bananas or something. And then you start your selection process. And I guess what I'm trying to figure out is, is your position that that description of that scenario is simply outside the claims, so it's an embodiment, who cares whether it's preferred or not, an embodiment, not insignificant embodiment, that simply isn't covered by the claims? Or are you saying it is actually covered by the claims because the user entered some item code for these items suggested by the database? The claims, as they are written, do not suggest any option for immediately selecting fresh salmon or bananas. Both claims require some form of a user input. So these are just unclaimed embodiments? Perhaps. Okay. What if, for example, going back to a flight and I have it on hold? I put a flight on hold or a reservation, hotel reservation. And I go back to it and I say, go back to your website, and I want to revise that reservation or to finalize it. And I'm asked for a record locator number or a hotel reservation number. It seems to me that once I punch in that, and I can find it, and I've identified it, I'm a user now, identify this code, that if I input this code, I'm going to get my, I'm going to be back to where I want to be. Why isn't that a user-dissentable information? The record locator? Correct. The record locator, although it is discernible, the series of numbers, 5, 6, Z, Y, K, they are discernible and readable. It is not user discernible in the terms of this patent. And I still refer you back. It doesn't say hotel room. I can't put in hotel room in Abilene. I've got to use something that's totally, to me, unrelated to hotel room in Abilene. It's just a series of numbers, just like a UPC code or a bar code that's got the numbers underneath it. Those numbers, I can identify them as having to input them, but is that really a user-dissentable information? Am I not entering an item code when I do that? No, because the flight that you otherwise would have on hold is not necessarily derivable if you just had that item code. You would not know that that related to a flight from ORD to DCA. It would not provide that information, and it would not provide it in return if you had that flight. Knowing that flight goes from DCA to O'Hare, you would not necessarily be able to derive that item code as well, and the patent teaches that. Okay, thank you. Thank you, Your Honors. I wanted to address a couple of the points that came up during my friend's argument. First, I think, Judge Toronto, you asked a number of questions about figure four and the related figures, and I think you had asked whether those described only situations where the user had previously entered the item code for the particular items that were presented in the options, and the patent makes very clear that's not the case. Where? Well, in context of figure eight is probably one of the clearest examples. Figure eight? Figure eight, and this is discussed at column 12, lines 3 to 13 of the specification. Figure eight involves, and this portion discusses, a situation where a merchant can present you with special offers for that day. These are the specials we have today. Those don't have to be things that the user has previously entered in the item code in some other form. Like I get from Southwest Airlines saying go to... Exactly, or any other number of possible ways, but figure eight, I think, shows certain cola or something like that that's the special today and what the price is. But it specifically says it provides the opportunity for the user to add these items to the present order list, and those have to be done by adding the item code, right? Well, and the way that you'd add the item code is by selecting that pre-presented item. So if I turn to figure eight here, figure eight shows the specials, and then it has this little box next to them. Checking that box is what transmits the item code and adds those to your list, not typing in a number. It's checking the box to add that item to the list. And those weren't things that you previously had typed in a number or scanned a barcode for. Those are things that are presented to you, you check the box, the item code is transmitted and thus used to add that item to your list. So you're presupposing that you have to have the item code in order to add something to the list. I'm presupposing that the patent contemplates that submitting an item code can be done in a number of ways, and one of them is by clicking something on the screen. Well, isn't the patent basically just saying that there are a number of ways to put a list together, and one of them is with item codes, and then the other is through this mechanism? I would disagree with that. I don't think the patent ever suggests that there are two alternative ways to create a list, one with item codes and one without. It suggests there are a number of ways to create lists, but it never suggests that any of them are exclusive of the use of item codes and user discernible representations. I'm sorry, it's a slightly different way of saying that, is you just don't think that significant embodiments here are unclaimed. That's correct, Your Honor. We don't think that these significant embodiments are completely unclaimed. There's nothing in the specification or the prosecution history that suggests that those embodiments were in any way disclaimed or not to be part of the invention. I also want to point out one thing. Counsel referred to the command entry device as being distinct from the data entry device. That's not correct. It says it can be the same. Exactly. Finally, I do want to say that to pick up on something that Judge Rayna asked about, the district court did not find legally insufficient any of Dr. Ryan's opinions about why item codes were present and found both declarations found at pages 4621-29 of the appendix and at 4758-61, or also because of the way the appendix was created at 4825-29. These were never found insufficient, and we think that the district court failed to properly recognize that those created a factual basis for a finding of infringement, even under the district court's construction. Okay. Thank you. The case will be submitted. Thank you, Your Honor.